IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAN PERKINS,

      **Plaintiff,**

vs.                                             No. CIV 05-452 LCS

**JOANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision [Docket #10], filed September 19, 2005. The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits. This matter comes before the Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is well-taken and shall be **GRANTED IN PART**.

**I.    STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four leves of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.    PROCEDURAL HISTORY

Plaintiff, now 53 years old, filed his first application for disability insurance benefits on July 9, 1993, alleging disability commending on December 5, 1989. [R. at 96-98] Plaintiff's disability was due to a work-related fall in which Plaintiff landed on his head and neck, [R. at 309-310] causing a separated shoulder, nerve damage, and several herniated discs. [R. at 118-127] Mr. Perkins's initial application for benefits was denied on June 6, 1994. [R. at 107-108]

Plaintiff filed a second application for disability insurance benefits on December 13, 1994, alleging disability based on the same conditions stated in his first application. [R. at 176-178] The matter was reviewed by two Administrative Law Judges ("ALJ") between 1995 and 1998. [R. at 232-236] A hearing was held before the second ALJ, who issued a decision denying Petitioner's application on December 10, 1998. [R. at 31-50] Mr. Perkins petitioned the Appeals Council for review of the ALJ's decision and this petition was denied on August 15, 2000, thus rendering the ALJ's decision the final decision of the Commissioner. [R. at 6-7]

Plaintiff filed his Petition for review of the Commissioner's decision in this Court on August 17, 2001. [01cv943; Docket #1] The Court issued its decision on December 11, 2002, remanding the matter to the Commissioner [Id.; Docket #20] and directing the agency to reassess Plaintiff's credibility and Residual Functional Capacity ("RFC") and to discuss Plaintiff's ability to perform work on a sustained basis given the determination about Plaintiff's RFC.

A hearing before a third ALJ was held on May 26, 2004 [R. at 713-729] The ALJ issued a decision on December 21, 2004 [R. at 654-656], granting Plaintiff's application for disability insurance benefits from December 5, 1989 until March 3, 1995. The ALJ further found that Plaintiff's condition had improved such that he had not been under a disability at any time since March 3, 1995. It is this ruling that Plaintiff now contests.

### III.   DISCUSSION

Plaintiff's disability apparently stems from a work-related accident which occurred in December, 1989, at which time Plaintiff fell from a ladder injuring his head, neck and shoulder. [R. at 309]. Shortly following this accident, Mr. Perkins visited Dr. Kent Akin, who noted pain in the cervical and thoracic regions of the back, as well as occipital headaches. [R. at 306-307].

3

These symptoms were felt to be due to residual soft tissue strain and out-patient physical therapy was recommended. Id. Dr. Akin did not feel Plaintiff could return to his previous employment without restrictions. Id. Mr. Perkins was later evaluated by Dr. Brad Edgerton between 1990 and 1991. Dr. Edgerton's initial impression was of cervical and lumbar strain, with possible disc herniation, right knee strain with medial compartment degenerative arthritis, and right anterior capsular strain of the shoulder with slight instability. [R. at 144] An MRI scan of Plaintiff's spine later revealed significant disc herniations at C5-6 and C6-7. [R. at 145]

As of June, 1990, Dr. Edgerton did not feel that physical therapy would be of additional help to Mr. Perkins. [R. at 139] He therefore suggested a neurologic consult to determine if some type of surgically treatable lesion were present. Id. Dr. Benjamin Crue examined Plaintiff and indicated in July,1990 that he did not believe surgical intervention would benefit Mr. Perkins. [R. at 167-170] Dr. Crue stated, "I feel a lot of his problem has now become habit, as he has developed a chronic, intractable benign pain syndrome . . . which, in my opinion, are always psychosomatic anxiety syndromes and not organic." [R. at 170] In early 1991, Dr. Edgerton opined that Plaintiff would be unable to return to his previous employment at any time in the future. [R. at 135] He further opined that Plaintiff had a total permanent impairment rating of 21%. Id. Vocational rehabilitation was suggested. Id.

Plaintiff was next referred to Dr. Eric Roberts for evaluation of continued pain symptoms. Dr. Roberts's impression was of disc bulging/herniation in the cervical and lumbosacral spine with possible radiculopathies in the bilateral upper extremity and right lower extremity. [R. at 338] Dr. Roberts recommended a second MRI of the cervical and lumbosacral spine as well as a second EMG and nerve conduction study. Id. A full orthopedic examination of the knees and

right shoulder was also recommended.  Id.  Dr. Roberts's notes indicate at least the possibility that Plaintiff could return to his former job.  Id.

Plaintiff was also evaluated by Dr. Peter Saltzman in April, 1992 at which time Dr. Saltzman opined Plaintiff had a 15% total body impairment.  [R. at 341]  Neurologic studies revealed essentially normal sensation in the upper extremities and normal strength in the upper and lower extremities.  [R. at 345]  X-rays of Mr. Perkins's spine showed no evidence of fracture dislocation, but only minimal arthritic changes in the cervical, thoracic and lumbar spine.  Id.  Degenerative arthritic changes were also noted in Plaintiff's knees.  [R. at 346]  Dr. Saltzman did not feel that surgery was indicated and advised Plaintiff to continue an aggressive conditioning program to maintain muscle strength.  Id.  Mr. Perkins and Dr. Saltzman apparently had a strong disagreement over whether narcotic pain medications should be used to treat his condition.  [R. at 347]

In December, 1992, Mr. Perkins was evaluated by Dr. Erich Marchand who observed significant degeneration of several discs in the cervical spine and mild degeneration in a thoracic disc.  [R. at 369]  Although the thoracic abnormality was not felt to be severe enough to warrant surgery, Dr. Marchand indicated that surgery to remove the cervical discs was medically indicated and would have a high probability of success.  Id.  Dr. Marchand recommended cervical spine operation with C6 vertebral cordectomy and a C5-C7 anterior cervical fusion.  [R. at 365]  The need for surgery in the thoracic region was felt to depend on the success of the cervical procedure.  Id.

During the course of 1993 and 1994, Mr. Perkins continued to visit Dr. Marchand and to engage in a course of physical therapy.  [R. at 355]  As of mid-1993, Dr. Marchand noted that

5

Plaintiff's range of motion had improved, but that his pain levels remained virtually unchanged. Id. Continued analgesics and therapy were recommended. Id. In April, 1994, Dr. Marchand indicated that Plaintiff had reached maximum medical improvement for his cervical and thoracic spine injuries. [R. at 172-173] Dr. Marchand felt Mr. Perkins had a 31% total body impairment at that time. Id.

Plaintiff underwent a capsulorrhaphy in August, 1993 due to continued shoulder pain, performed by Dr. Robert Lehmer. [R. at 394, 397]. In November, 1993, Mr. Perkins underwent arthroscopic debridement with chondroplasty of the right knee, also performed by Dr. Lehmer. [R. at 382-386] Plaintiff continued to have regular appointments with Dr. Lehmer until April of 1994, at which time Dr. Lehmer opined that Plaintiff had reached maximum medical improvement of both his shoulder and knee. [R. at 375-376] The combined 'whole-person impairment' based on the shoulder and knee conditions was felt to be 14%. [R. at 376] In April, 1994, Dr. Lehmer directed Mr. Perkins to return on an as-needed basis for his shoulder and knee problems. Id.

An independent medical evaluation performed by Dr. George Leimbach in July, 1994, revealed a 37% whole person impairment. [R. at 416-431] The various diagnoses from this examination included cervical disk disease with probable radiculopathy, lumbar disk disease with disk herniation and probable radiculopathy, right shoulder dislocation with persistent instability, mild musculocutaneous nerve injury, and right knee pain with chondromalacia. [R. at 424]

A vocational assessment and testing profile was completed in January, 1995. [R. at 278-99] It was felt that Mr. Perkins could not return to any of his past relevant work. [R. at 292] The vocational examiner concluded that Mr. Perkins was unable to meet the job demands of any type of regular employment. [R. at 293] This conclusion was based on Mr. Perkins' limited

education (eighth grade) and his inability to perform repetitive work with his hands. [R. at 292] It was also felt that Plaintiff's chronic pain, poor sleep, frequent headaches, frequent need to change positions, and frequent need to be in a reclining position made his abilities, "incompatible with competitive work." Id. While the vocational examiner did consider Mr. Perkins' capacity for training, it was noted that any training would have to be extended considerably to allow Plaintiff to obtain his GED. The examiner concluded that, given Mr. Perkins' limitations, it was unlikely he could return to any type of competitive work, even with the provision of technical training. [R. at 293]

      A vocational capacity assessment was completed in March, 1995 by physical therapist Theresa Guerin. [R. at 612-623] Mr. Perkins indicated to Ms. Guerin that his back pain was increased by bending or stooping, sitting for longer than 15 to 45 minutes and standing for longer than 20 minutes. [R. at 615] Ms. Guerin stated Plaintiff became argumentative at times during the examination and refused to perform several examination tasks. [R. at 617] She further indicated that Plaintiff was uncooperative, did not put forth maximum effort, and exhibited symptom magnification during the exam. [R. at 618] Ms. Guerin found that, while Mr. Perkins did demonstrate some consistent cervical and thoracic range of motion limitations and muscle irritability, these would limit his work to the medium-heavy level only. [R. at 619]

      The medical record is virtually silent until 1997, at which time Dr. Marchand referred Mr. Perkins to Dr. Arlene Brown for further evaluation of back pain. [R. at 469] Dr. Brown indicated she agreed with Dr. Marchand's conclusions about Plaintiff's back pain, although she did not specifically state what those conclusions were. [R. at 468] She further stated that Plaintiff was restricted to lifting no more than 10 pounds. Id. Mr. Perkins was also given a

prescription for Percocet. [R. at 469]

Plaintiff next visited Dr. Javier Torres in June, 1998. [R. at 628-30] Dr. Torres found decreased range of motion in the cervical and lumbar spine and noted that Mr. Perkins had difficulty sitting in the office for a prolonged period of time. [R. at 629] He further indicated that Plaintiff was limited in the various movements he could perform and limited in his ability to sit or stand to 15 minutes at a time. Id. His back and shoulder impairments were also felt to limit his ability to reach and/or handle objects and to perform pushing or pulling motions. Id.

The next records date from June, 1999, at which time Plaintiff had an X-Ray of the left elbow. The radiologist's impression was of chronic dislocation associated with post-traumatic arthritis. [R. at 709] An MRI of the spine performed in January, 2003 revealed degenerative disease of the spine, with severe spondylosis and central spinal stenosis of the cervical spine. [R. at 710-711] Osteophytes and disk protrusion were observed in the thoracic spine and disc protrusion was also observed in the lumbar spine. Id.

## IV.   ANALYSIS

The ALJ determined in 2004 that Plaintiff had been under a disability as defined in the Social Security Act from between December, 1989 and March 3, 1995. [R. at 665] The ALJ further found that Plaintiff's condition had subsequently improved such that he had not been under a disability at any time after March 3, 1995. Id. It is this conclusion that Plaintiff principally contests. Plaintiff's first allegation of error is that the ALJ's determination that he underwent substantial medical improvement was not supported by substantial evidence. He further alleges that the ALJ erred by not consulting a vocational expert to determine whether his medical improvements allowed him to engage in substantial gainful activity.

### A.     Use of Inappropriate Medical Sources

Mr. Perkins contends the ALJ did not base his conclusion of substantial improvement on appropriate evidence. Specifically, he argues that the ALJ improperly gave controlling weight to the opinion of a physical therapist in determining substantial medical improvement. The ALJ concluded that Mr. Perkins had been capable of performing a wide range of sedentary work since March 3, 1995. [R. at 660] This date coincides with the functional capacity evaluation performed by Theresa Guerin. [R. at 612-23]

It is generally accepted in the Tenth Circuit that the opinions of treating physicians are often entitled to controlling weight when determining a claimant's level of impairment. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001); *see also* 20 C.F.R. § 404.1527(d)(2). In addition, examining or treating physicians may qualify as an "acceptable medical source" when establishing the presence of an impairment. 20 C.F.R. § 404.1513(a)(1). While evidence from other sources may be used in determining the level of severity of a claimant's impairment, it is clear that such sources are not to be given controlling weight in the presence of conflicting physician's opinions. *See Branum v. Barnhart*, 385 F.3d 1268, 1272 (10th Cir. 2004) ("[T]he primary individual that plaintiff was seeing . . . is not a medical doctor. As a result, the records generated . . . did not come from an acceptable medical source."); *see also* 20 C.F.R. § 404.1513(d).

It is apparent that the ALJ used the Functional Capacity Evaluation ("FCE") completed by Ms. Guerin to establish the date upon which Mr. Perkins became able to perform substantial gainful activity in the form of sedentary work. [R. at 660] Ms. Guerin's opinion does not constitute an acceptable medical source under either Tenth Circuit precedent or the regulations. The ALJ gave significant weight to this report despite discrediting portions of that report: "The

9

March 1995 FCE . . . concluded that the claimant could perform medium work . . . [t]his assessment is not supported by the record." [R. at 663] The ALJ further found that the March, 1995 FCE reflected "a more objective assessment of the claimant's residual functional capacity than FCE's performed in conjunction with worker's compensation litigation." [R. at 660] It is also notable that, despite giving significant weight to the March 1995 FCE which suggested Plaintiff could perform light to medium work, the ALJ did not refer to the contents of the January, 1995 vocational assessment which indicated Mr. Perkins was unable to perform any type of substantial gainful activity. [R. at 293]

### B. Opinions of Treating Physicians

More significant for purposes of my analysis is the ALJ's discussion of the opinions of Plaintiff's physicians. In evaluating a treating physician's opinion, an ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* If the opinion is deficient in either of these respects, it is not entitled to controlling weight. *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, "treating source medical opinions are stll entitled to deference and must be weighed using all the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.[1] *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir.

---

[1] These factors are: 1) the length of the treatment relationship and frequency of examination; 2) the nature and extent of the treatment relationship; 3) the degree to which the opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether the physician is a specialist in the area upon which the opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.*

2004). Additionally, the ALJ must give good reasons for the weight assigned to a treating physician's opinion that are "sufficiently specific to make clear . . . the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300. An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and "not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

It is unclear from the record before the Court the extent to which Drs. Brown and Torres should be classified as treating or consulting physicians for purposes of the weight to be given their opinions. The record presented to me contains only one report from each physician. However, it is apparent from Plaintiff's testimony that he saw Dr. Brown on a regular basis and that he visited Dr. Torres on at least several occasions.

While it is not clear what weight the ALJ gave the opinions of Dr. Brown and Dr. Torres, it is apparent that he rejected at least some of Dr. Torres' findings. Dr. Torres opined that Plaintiff needed a cane to ambulate, but the ALJ rejected this finding by noting, "the need for such appliance is not noted by Dr. Brown in contemporaneous reports." [R. at 663] The ALJ also rejected Dr. Torres' assessment that Plaintiff could not sit for prolonged periods of time by noting, "his exam does not document significant neurological or other findings to support this assessment." Id. However, it is apparent from an examination of Dr. Torres' report that he performed a rather extensive clinical evaluation of Mr. Perkins to support his conclusion that Plaintiff was unable to sit for prolonged periods and had difficulty performing certain movements with his arms and hands. [R. at 629]

The ALJ also cited Dr. Brown's finding that Plaintiff was able to work. [R. at 663] I

have been unable to find such a conclusion in the record. Dr. Brown's records state, "His number of hours per day are at his discretion, whatever Mr. Perkins is comfortable with which results in the least amount of pain." [R. at 468] While it is apparent that the ALJ considered Dr. Brown's and Dr. Torres' opinions, it is not clear that the conclusions he drew from these opinions are supported by the record. As such, I do not believe the conclusions drawn from these opinions were supported by substantial evidence.

Furthermore, it is unclear what weight, if any, the ALJ gave to the conclusions of Dr. Marchand and Dr. Lehmer, as their treatment of Plaintiff is not mentioned in the ALJ's opinion. Although the evaluations of these two physicians occurred largely prior to March 3, 1995, and were therefore within the time the ALJ found Mr. Perkins to be disabled, there is no discussion of any opinion by these treating physicians to support the contention of Ms. Guerin that Plaintiff was able to engage in substantial gainful activity subsequent to March, 1995. Although the ALJ need not discuss every piece of evidence, the record must demonstrate that he considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Because it is not clear that the ALJ considered these opinions, I find that his determination was not supported by substantial evidence.

### C.    Analysis of Plaintiff's Credibility

Although not specifically contested by Plaintiff, I feel compelled to discuss the ALJ's assessment of Plaintiff's credibility. In general, credibility determinations made by an ALJ are binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). Credibility determinations are particularly the province of the finder of fact and the Court has generally declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of*

*Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, I am not convinced that the ALJ's determination that Plaintiff was not credible was supported by substantial evidence.

The Tenth Circuit has previously set forth a framework for the proper analysis of allegedly disabling pain.  *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).  The ALJ must consider: 1) whether Claimant has established a pain-producing impairment by objective medical evidence; 2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.  *Id.* at 163-64.  I have examined the ALJ's opinion and find that the ALJ erred in completing this analysis because it is not clear that all the evidence surrounding Plaintiff's allegations of pain was considered.

The ALJ apparently bases his credibility determination on the lack of medical treatment sought by Plaintiff following a favorable workers' compensation settlement in 1995.  [R. at 661] However, it is apparent from the record that Plaintiff began seeing Dr. Brown as early as 1997. [R. at 468-69]  The ALJ further found that Mr. Perkins was not utilizing pain medication to the same extent he had been immediately following his accident, and cited this evidence to support the conclusion that Plaintiff's condition had improved.  The records indicate however that Dr. Brown had prescribed Percocet, a narcotic analgesic, for pain as early as 1997.  [R. at 469]  Plaintiff additionally testified at the 2004 hearing that Dr. Brown had placed him on Oxycontin, also a narcotic analgesic, and Flexeril, a muscle relaxant.  The ALJ did not mention this treatment in his opinion, and I find that this evidence, coupled with the MRI performed in 2003, casts doubt on the ALJ's contention that Plaintiff's complaints of pain were not credible.

The ALJ further cited to Plaintiff's supposed testimony during the 1998 hearing that he

13

"bought a ramshackle house" and that he "purchased livestock" [R. at 663] as evidence that Mr. Perkins was exaggerating his symptoms. However, I have examined the transcript of the 1998 hearing [R. at 58-95] and have found no such testimony. Moreover, buying a house and livestock is not necessarily inconsistent with disability under the Social Security Act. The ALJ pointed to this testimony as further evidence of improvement. However, based on these factors, I believe the ALJ went beyond the bounds of reasonable discretion in finding Plaintiff was not credible and I reject the ALJ's credibility finding.

### D.     Whether Remand is Appropriate

This Court has discretion to either remand a case or to reverse and order an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Benefits are to be awarded when substantial evidence requires a finding of disability. *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987). A remand for an immediate award of benefits may be appropriate where "additional fact-finding would serve no useful purpose but would merely delay the receipt of benefits." *Harris v. Sec'y of Health and Human Svcs.*, 821 F.2d 541, 545 (10th Cir. 1987). The Tenth Circuit has referred to the length of time a case has been pending when reversing and remanding for an immediate award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). The Tenth Circuit has remanded for further proceedings when the record "does not substantially support a finding of disabled any more than it supports a finding of not disabled." *Thompson v. Sullivan*, 987 F.2d 1482, 1493 (10th Cir. 1993).

In this instance, I find the ALJ erred in evaluating Mr. Perkins' credibility and residual functional capacity. Given the record before me however, I am not in a position to say there is substantially more support for a finding of disabled than not disabled. As I noted previously, the

14

bulk of the medical evidence provided was obtained prior to 1995. Although I find that the ALJ erred in finding substantial improvement had occurred by March of 1995, the record is too incomplete for me to make a finding of disability eleven years later in 2006. Accordingly, although I hesitate to remand a matter that has been pending for over ten years, I find that additional fact finding would be useful. As such, a remand for immediate award of benefits is not warranted in this situation.

## V.    CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand, I have determined that the Commissioner's decision was not supported by substantial evidence. Plaintiff's Motion to Reverse and Remand the Commissioner's decision is therefore **GRANTED**. Upon remand, the Commissioner shall examine Plaintiff's residual functional capacity, engage in additional fact finding if such is warranted, and make further findings consistent with this opinion.

**IT IS SO ORDERED**.

**A JUDGMENT CONSISTENT WITH THIS ORDER SHALL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**